All right, United States v. Robinson and Mr. Graham, whenever you're ready. May it please the court, I'm John Graham on behalf of Cornell Robinson. This court's decision in United States v. Stanley is directly on point and it requires a reversal of Robinson's conviction under the duplicitous firearms possession count. Because of that duplicitous indictment and the general verdict sheet that was rendered in this case, this court cannot determine whether Robinson's right to a unanimous verdict is viable. So was there an objection to pay on the basis of duplicity? None of the trial, Your Honor. It was not objected to. We don't dispute that this is therefore subject to plain error review. That's a real problem for you, isn't it? Well, Your Honor, it is certainly a very deferential standard of review. However, in cases where there's a genuine risk of a non-unanimous verdict which rises above the level of technicality, this court can review a decision that affects a defendant's substantial right. In this case, as in Stanley, Stanley is directly on point because in that case as well, there was a duplicitous indictment and the court reversed that conviction because it could not determine which of two firearms the defendant... So was that a waiver case? There was not a waiver issue in Stanley, Your Honor. However... In order to get beyond the issue of waiver here, don't you have to have planned and shown good cause? Your Honor, yes. In the King case, the court held that good cause is necessary. Now, do you do that? Your Honor, we have pled that the plain error standard is satisfied and the court has, in the past, reviewed unraised duplicitousness issues for plain error. Now, where do we find, though, in your brief that there's good cause and you've argued good cause? We don't argue explicitly under the good cause standard, Your Honor. We argue under the plain error standard. Right, but don't you have to have good cause to get there? Under the court's decision in Robinson, the court reviewed, out of an abundance of caution, a duplicitous argument not under a good cause standard, but under a plain error standard. It's an earlier decision than the King case, and so if that's in conflict with King, it would control. Since the court has, in the past... It wasn't just a failure to object to the instruction, but there was a joint instruction submitted. There was a joint instruction, Your Honor, and the government has argued that it was therefore an invited error, but I think that argument... That's even worse than plain error. Well, it is, Your Honor. Well, it is when you offer the instruction and you get it. But, Your Honor, there was no affirmative instruction here that the defense requested, which we object to. The error occurred in the indictment. Well, the government says there's no error at all. The government says there's no error at all. Under Stanley, that's not correct. I would say Dunford is their case. I think that Dunford is best understood as being limited to its unique facts, Your Honor, and I think that the subsequent decision in Goodeen... No, I mean, it was a published decision and the basic question is, is it really duplicitous when you have a situation of one crime, which is here carjacking, and it's committed by multiple means, which is two guns. There's nothing duplicitous about that. I mean, the fact that you use one firearm or another doesn't create a different count or a different crime, nor does it add an element. The things that would be required to make something duplicitous would be as if we were talking somehow about two different counts. It should have been one or whatever, but here, Dunford said squarely something's not duplicitous when you talk about one crime committed by conceivably two means. Your Honor, I think that the decision in Goodeen shows that when the separate means involve different evidence, that they are properly charged as two offenses. Well, was there any contest at trial as to the defendant's possession of the handgun? No, Your Honor, and I think that certainly there was evidence that could support a finding that he had the handgun, but under the Stanley test, that's not enough because in Stanley, the court explicitly ruled that there was sufficient evidence to support possession of one of the two firearms. Nevertheless, was it sufficient evidence or was it uncontested evidence? It was sufficient. The defendant challenged the sufficiency of the pistol that was found in his house. But that's not happening here. That was my point, that the evidence was uncontested that the defendant employed a firearm during the firearm he was holding, the handgun, during the commission of the other crime. I mean, there was never issued, correct me if I'm wrong, there was never issue taken with that as a fact. I don't think that there was ever, it wasn't conceded that he had the firearm. I don't think it was a disputed question. However, the way, and it may be true that if the government had charged that act of possession as a discrete count, there would be no issue on appeal. The problem is that the way the government charged the firearm possessions and instructed the jury, they created alternate factual requirements to support the convictions. So they charged him with possession of the Beretta and also possession of the shotgun. No, because the definition of the crime only requires that you possess one weapon. And, you know, the evidence could go to possession of several weapons. You could, there may have been five weapons somewhere around, but the elements of the crime and what's needed to convict only requires the possession of one. But the rest of it is just, if there are five weapons in the neighborhood and the only need to possess one, all that the other weapons do is they don't create a duplicitous count. They just create evidence for the jury to consider on its way to deciding whether or not the defendant possessed one of those weapons. But those other weapons are not, they don't create different counts. They're just evidentiary for the jury to consider to find in the final analysis whether there's a possession of a single weapon. The jury would still have to find that he possessed a weapon. That's right. Fine. And that's the way they were instructed. Yeah, he possessed a weapon. He used to have a singular. Well, but they would have to unanimously agree that he possessed one of those guns. That's what the instruction was. Well, the instruction didn't have a specific unanimity instruction that they all had to agree on one of the guns. And the way that the government, the way that the government structured the firearms possession charge as an alternative between actual and constructive possession, then the jury would have to have found different facts to support each of the firearms. You know, there's sometimes these instructional errors, and the courts warned us over this, you know, get to the point where we're almost medievalist and having angels dance on the head of pimps. And it's really very straightforward, which was that, did he possess a weapon in connection with the carjacker? And, you know, it's very straightforward. You know, I mean, lawyers are masters, and I don't blame them for a second. Lawyers are masters in obfuscation and complication and all the rest of that. But sometimes, maybe not all the times, but sometimes things are pretty simple, pretty straightforward. Did he possess a weapon in connection with the carjacking? Submit it to the jury. Yes or no. Case closed. And, Your Honor, the issue here, however, is that we cannot determine from the record whether the jury unanimously agreed that he did possess a weapon. They possessed. They did unanimously agree. They said guilty. They said guilty, but we don't know which set of facts. We know that they found that he possessed a weapon. They, we know that the 12 jurors, each of them believe that he possessed one of those weapons. However, we don't know that they were unanimous as to any one of them, which. They don't have to be. I think, Your Honor, that under Gaudin, they would because of the different factual predicates for the different acts of possession. So, for instance, the, as the jury was instructed on actual possession, that would require him to have a gun in his physical custody, whereas constructive or joint possession would require him. Well, you would require us to have the district judges, if they charged he had five weapons at one time all over his body, that they'd have to have a special interrogatory to the jury to see whether they agreed on this one, this one, this one, this one. And, Your Honor, I think that's. If they asked for five counts and you'd say that's multiplicitous, then it would be multiplicitous, right? I think Gaudin answers that question, Your Honor. I think that the, if each of those five counts is supported by separate evidence, then under Gaudin, it's not multiplicitous, whether the defense would have objected to it or not. Again, here, the issue is that the jury could not have found that he actually and constructively possessed the same weapon, because those two counts, those two theories required opposite findings. One required actual custody and one required control over a weapon that he did not have in his custody.  So the jury could have only found that he constructively possessed the shotgun and that he. The statute doesn't say constructive or actual. It just says possession. And that Dunford case says that the unlawful possession of more than one firearm at the same time only supports one conviction. If he had one on each hip, and both of them were unlawful possession, he's guilty of one crime, not two. Correct, Your Honor. But if the, if half of the jury, for instance. Whether it's actual or constructive or whatever you want to call it, it's possession. But if, if the jury disagreed and was not unanimous on those facts, then they could not have. The jury agrees when it returns the guilty verdict. We look at that in the light most favorable to the government, to the jury. Yes, Your Honor. However, I would also point out that, that the, as we've, as we've stated in our brief, there is, there really was no evidence that he possessed the shotgun at all. It was used by his co-defendant exclusively. There was no evidence of the control that he had over that shotgun, which would have been required to support. Well, then if there was evidence, Sue, you're right. If there was evidence, then he had the other one. And, and. And that's enough because the statute requires possession of a weapon. It, from a sufficiency perspective. However, under Stanley, the court cannot simply assume that the jury convicted him of the firearm that was supported by the evidence. If it were the rule that because there was evidence supporting the pistol, his conviction has to be affirmed, then the court would have announced that rule in Stanley because it specifically held that there was sufficient evidence to support the pistol possession. But because the court in Stanley could not determine which of the two guns he had been convicted of, and there was no evidence to support the other one because it had been suppressed, the court reversed. And since this court likewise cannot determine which of the two guns the jury found him guilty of possessing, it cannot assure itself that the jury was unanimous with respect to a gun that was supported by the evidence. For example, if, if 11 jurors thought he possessed the pistol, and one of them disagreed but thought that he possessed the shotgun, there was no evidence to support the possession of the shotgun. And that would therefore not be a unanimous verdict as to the one gun that did have evidentiaries. Of course, it would be a unanimous verdict that he possessed a weapon in connection with the carjacking. It would be perfectly unanimous. Doesn't, you know, the jury in its verdict, there may be a lot of situations where in the jury room they disagree on one or another detail about a crime. And maybe the jury disagrees on about one or another piece of evidence. But, you know, ultimately they have to decide, well, in terms of the But the fact that the jury may disagree over a piece of evidence in a crime doesn't necessarily mean that they disagree on the ultimate conclusion that the elements of the crime were met. And if we start going down the road of saying every time that there may conceivably, hypothetically have been some kind of jury disagreement over one or another item of evidence and that that undercuts the verdict, we're getting far away from congressional intent. What Congress didn't like was it had nothing to do with the kind of weapon that might be possessed. What Congress didn't like was somebody carrying out a carjacking with a weapon. And we completely undermine the legislative intent in defining the crime when we get to where you, if we travel down the road, that you wish us to take. It just, there's a certain respect for the legislature that has to be acknowledged here. They're not saying, oh, you know, he committed this with a machine gun, no problem, or it may have been with a pistol. All they want to know is whether there was a carjacking carried out with a forcible use of a weapon. And the jury said, yeah, guilty. Case closed. It's simple, simple. Your Honor, I don't believe that Congress intended to lighten the government's burden and allow convictions that were not unanimous. And this Court's decision- Well, it wasn't unanimous. It was unanimous. It was unanimous as recorded on the- The verdict was unanimous. It was a unanimous verdict on the general verdict sheet. The general verdict, which found that it was alleged and indicted to prove it. And because- It was going to the instructions. And because the indictment included multiple acts, and the general verdict sheet doesn't allow the Court to verify which gun he was found guilty of possessing, the Court's decision in Stanley requires that it be reversed because this Court cannot determine which of the two guns he was found guilty of possessing. Thank you. Thank you, Your Honor. Ms. McClain, let's hear from you. May it please the Court, good morning. Your Honors, I'm honored to be here for the first time. On behalf of the United States of America, my name is Patricia McClain. I'm a little thrown for a loop. I actually, I had an opening statement prepared more on the intent as to the carjacking rather than to the issue under 922G because- It's a jury question, isn't it? And that's correct. That's correct. There's much more to say about the intent part. 430 in the morning, you couldn't have casted this in a movie any better. I agree. I agree. Is there anything you wish to add to what the panelist said? You listened to the argument. I have listened to the argument only in terms of there was excellent trial counsel representing Mr. Robinson. And he did not make this an issue because it is just accepted law that if there are multiple guns being used in the same scheme that are recovered at the same time, used at the same time, that it constitutes one count. And therefore, trial counsel's argument was much more focused on the intent for carjacking. Obviously, it wasn't very successful. But I actually don't have any more to add unless your honors have further questions for me on the brief. As Judge Agee pointed out in the early argument, he's carrying a loaded pistol. Correct. I guess it's pointed at the victim here. He asked her if she wanted to die. Then he took her keys. Hard to make much more of an argument after that. Correct. 4.30 in the morning, mask on, two men with masks on, loaded weapons pointed at her the entire time. A woman who is not only pregnant, laboring. She has the baby later that day. Arguably, there are two lives that are in jeopardy in this scenario. How many times did he threaten to shoot her? At least twice, your honor. She asked her if she wanted to. Multiple times. That's correct. That's correct. They threatened to shoot her. Maybe that's what he said. They threatened to eat her. Correct. Let me ask my co-panelists if they have further questions. I'm fine. We're fine, thank you. Thank you very much, your honors. Mr. Brown? May it please the court, I would just very briefly respond to the government's argument on the intent. The government has certainly established that Robinson made numerous and serious threats to Crawford in this case. However, under Holloway, the Supreme Court requires the court to distinguish between threats and an actual intent. They took the keys out of her hand, and the co-defendant testified that since they weren't able to get her boyfriend, they wanted to get something out of the car. Yes. There's no doubt that they intended to take her car, but under the Holloway standard, he has to have the actual intent to kill or injure her if she doesn't comply. Wasn't he pointing a loaded pistol at her? Yes, he was. And threatened her? Yes. And inferred. Do you want to die? That's pretty explicit. It's an explicit threat, your honor. And when he was pointing the pistol at her and making those threats, he was which she did not do. And in Holloway- He used the car out of her hand? Yes. After she refused to let him into the apartment. And in Holloway, the Supreme Court focused on a defendant's conduct if a victim does not surrender. It said that if a victim does surrender, the government has to prove that the defendant would have been prepared to use- Well, this is a jury question, too. And surely you're not asking us to say that when you carry a loaded pistol and you're pointing it at somebody in labor that the jury is precluded from finding an intent to cause harm. It is a jury question, your honor, but the ultimate standard of review for intent remains de novo. And the jury properly- The ultimate standard remains the question of whether there's evidence that any reasonable fact finder could use to return a verdict of guilty, viewing the facts in the light of the party that prevailed after a jury verdict. Sometimes I think we lose track of the common sense of this. And when you have- When you carry a loaded pistol in connection with a carjacking, you intend to cause harm, even if it's- I'm not sure that it needs to be actual physical harm, because the trauma of that kind of thing, I don't know what effect it would have on the labor or the pregnancy, but it certainly would psychologically have been something that this victim would not be able to forget for the entire rest of her life. And to me, that's harmful, which is harmful to the opposite of beneficial. I see my time is almost up. May I briefly respond to that? Just point out that in the statute, the intent is to cause death or serious bodily injury. So I don't know that that would allow for a psychological injury. All right. Thank you. Thank you, Your Honor. Would you like to come down and read counsel and move directly into our next case?
judges: J. Harvie Wilkinson III, Robert B. King, G. Steven Agee